UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH RUBEN MARTINEZ,

          Claimant,

    v.

CAROLYN W. COLVIN,

          Commissioner.

Case No. 14-cv-03314-NC

**ORDER RE: MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 17

      Claimant Joseph Ruben Martinez seeks judicial review of the Commissioner of Social Security's final decision denying his claim for disability insurance benefits. Claimant argues that the Administrative Law Judge ("ALJ") improperly discredited his subjective symptom testimony. Because the Court finds that the ALJ failed to properly address claimant's complete record of subjective testimony, the Court GRANTS Martinez's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. Accordingly, the Court REVERSES the ALJ's decision, and REMANDS the case for further proceedings. On remand, the ALJ must consider all subjective symptom testimony in the record and provide specific, clear and convincing reasons if discrediting any testimony.

//

//

Case No. 14-cv-03314-NC

United States District Court
Northern District of California

## I.   BACKGROUND

On May 21, 2008, claimant Joseph Ruben Martinez filed an application for a period of disability and disability insurance benefits pursuant to the Social Security Act, Title II, alleging disability beginning June 13, 2007, until his date last insured of June 30, 2010. A.R. 214-15.  On July 7, 2008, claimant completed an Exertion Questionnaire to support his application.  A.R. 275.  In his responses, claimant stated that he had pain in his left knee when he walks, goes up and down stairs, and climbs a ladder.  *Id.*  He also stated that after he walks for two miles, his knee hurts.  *Id.*  Martinez responded that he could lift up to 40 lbs., that he goes grocery shopping once per week, drives a car, sweeps, mops, makes his bed, and does laundry.  A.R. 276.  He stated that he takes over-the-counter Motrin for his pain.  A.R. 277.  Claimant's application for disability benefits was denied initially and upon reconsideration.  A.R. 105-08, 112-17.  Claimant then appealed to the ALJ. A.R. 119.

Mary Parnow, an ALJ, presided over claimant's hearing on June 10, 2010.  A.R. 67-81.  At the hearing, claimant testified that he was "unable to climb a pole, ladder, or crawl underneath the house" or put pressure on his left knee.  A.R. 71.  Claimant testified that he could walk "as little as five minutes [to as much as 20 minutes" before his knee would "shift on [him]" and "pop[] in and out of joints."  *Id.*  He claimed it would take him five minutes to 15 minutes to "massage it back in."  *Id.*  In addition, claimant stated that if he stood in one position for 15 to 30 minutes, he is "almost sure" it would "lock up." A.R. 72.  Claimant testified that if he sat longer than 30 minutes, he had to "flex [his knee] out" for five to ten minutes to walk again.  *Id.*  Claimant testified he was taking Naproxen twice per day or as needed, and that he needed stronger medication.  A.R. 73-4.  Claimant also told the ALJ that his right knee was beginning to be affected, and his left ankle was "really bad" because he had been walking on the outside of it.  A.R. 76.  Lastly, claimant testified that he experienced numbness in his toes and feet.  A.R. 75.

The ALJ issued an unfavorable decision, finding that Martinez had residual functional capacity to perform the full range of sedentary work.  A.R. 90.  Claimant

1   requested review with the Appeals Council.  A.R. 168.  On April 24, 2012, the Appeals

2   Council vacated the ALJ's decision and remanded the case for further proceedings to

3   determine what jobs the claimant would be capable of despite his impairments.

4   A.R. 101-04.

5          Pursuant to the order of the Appeals Council, the ALJ held a supplemental hearing

6   on September 12, 2012, to determine whether the claimant had any transferrable skills to

7   other occupations.  A.R. 47-66.  At that hearing, claimant testified that he had total knee

8   replacement in his left knee, and that he was not using assistive devices to walk.  A.R. 51.

9   Claimant testified that he also feels pain in his right knee.  A.R. 55.  Claimant estimated

10  that he could lift about 25 to 30 lbs., but could not lift regularly through a work day.

11  A.R. 56.  He also stated that he has to stretch out his knees two to three times per hour if he

12  is sitting.  *Id.*  Additionally, claimant testified that his lower back and shoulders start to

13  hurt if he stands for 30 minutes.  A.R. 57.  Martinez also stated that he was still

14  experiencing peripheral neuropathy, causing numbness in his feet.  A.R. 53.  He explained

15  that the numbness made it hard to control his balance while he walked.  *Id.*

16         On November 15, 2012, the ALJ denied Martinez's claim for benefits.  A.R. 17-32.

17  At step one, the ALJ determined that claimant had not engaged in substantial gainful

18  activity during the period from his alleged onset date of June 13, 2007, through his date

19  last insured of June 30, 2010.  AR. 23.  At step two, the ALJ determined that claimant

20  suffered from severe impairments consisting of degenerative joint disease of the left knee,

21  status post arthroscopy for meniscus tear; diabetes mellitus; and peripheral neuropathy.  *Id.*

22  At step three, the ALJ concluded that claimant did not have an impairment or combination

23  of impairments that met or equaled listing.  *Id.*  At step four, the ALJ found that claimant

24  had the residual functional capacity to perform a full range of light work, acknowledging

25  that she mistakenly characterized the residual functional capacity as "sedentary" in the

26  previous order. A.R. 20-21.

27         In evaluating claimant's subjective symptom testimony the ALJ stated, "At the most

28  recent hearing, the claimant alleged numbness in his feet, making it difficult to sustain his

balance.  While I do not doubt that his condition is advancing, I am limited to considering the claimant's condition prior to his last date insured of June 30, 2010."  A.R. 25.  The ALJ explained that claimant alleged he could walk two miles, and that claimant estimated he could lift 40 lbs.  *Id.*  She also observed that claimant "only takes over the counter Motrin at night."  *Id.*  The ALJ found that these statements were not "inconsistent with a residual functional capacity for light work."  *Id.*  Finally at step five, the ALJ held that claimant could not perform his past work, however, retained transferrable skills to a significant number of alternate occupations.  A.R. 26.  Claimant appealed, and the Appeals Council denied claimant's request for review.  A.R. 1-6.  The ALJ's decision dated November 15, 2012, became the final decision of the Commissioner.

Claimant filed suit in federal court on July 22, 2014.  Dkt. No. 1.  Both parties consented to magistrate judge jurisdiction.  Dkt. Nos. 9, 10.

## II.   LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).  "When the Appeals Council denies a request for review, . . . the ALJ's decision becomes the final decision of the Commissioner."  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or it is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation and quotation omitted).  "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005) (internal citation and quotation marks omitted).  It is evidence that a reasonable mind would accept as adequate to support the conclusion.  *Id*.  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal citation and quotation omitted).  Furthermore, a decision by the ALJ will not be reversed

United States District Court
Northern District of California

1    for errors that are harmless.  *Burch*, 400 F.3d at 679.

2    **III.  DISCUSSION**

3        Martinez contends that the ALJ's adverse credibility finding was not supported by

4    the record because the ALJ failed to consider claimant's subjective pain testimony given

5    on June 10, 2010, twenty days prior to his last date insured.  Dkt. No. 16 at 10.  The

6    Commissioner, however, asserts that the ALJ reasonably relied on claimant's Exertion

7    Questionnaire completed on July 7, 2008, "comfortably within the disability benefits

8    period," rather than the hearing testimony on June 10, 2010.  Dkt. No. 17 at 3.  Claimant

9    alleged that he qualified as disabled on June 13, 2007, and he last met insured status

10   requirements on June 30, 2010.  Dkt. Nos. 16 at 3; 17 at 3.  Although the Commissioner

11   argues that the ALJ was entitled to decide that "it was the former testimony rather than the

12   latter that mattered in this case," the Court finds that the ALJ failed to provide clear and

13   convincing reasons for rejecting claimant's subjective hearing testimony.  Dkt. No. 17 at 3.

14       **A.    ALJ's Adverse Credibility Determination Was Not Supported by Clear and
             Convincing Reasons**

15

16       To evaluate a claimant's residual function capacity, the ALJ "must consider all

17   relevant evidence in the record, including, . . . medical records, lay evidence, and the

18   effects of symptoms, including pain, that are reasonably attributed to a medically

19   determinable impairment."  *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.

20   2006) (internal quotations omitted).  If an ALJ discredits claimant's subjective symptom

21   testimony, the ALJ is "required to make a 'credibility determination with findings

22   sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

23   discredit claimant's testimony.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

24   2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

25       To evaluate the claimant's subjective symptoms, the ALJ must follow a two-step

26   process.  *Tommasetti*, 533 F.3d at 1039.  At step one, the claimant has the burden to

27   produce objective medical evidence of the underlying impairment that could reasonably

28   give rise to some degree of the symptoms alleged.  *Id.*  If the claimant meets the burden

1    and there is no affirmative evidence of malingering, the ALJ moves on to step two.  *Id.*

2         At step two, the ALJ must determine the credibility of the claimant's statements

3    about the symptoms and severity of pain.  *Robbins*, 466 F.3d at 883.  The ALJ can reject

4    the claimant's testimony about the severity of his symptoms by offering "specific, clear

5    and convincing reasons for doing so."  *Tommasetti*, 533 F.3d at 1039.  The ALJ may not

6    disregard a claimant's subjective symptom testimony solely because it is not substantiated

7    affirmatively by objective medical evidence.  *Robbins*, 466 F.3d at 883.  Furthermore, an

8    ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of

9    supporting evidence."  *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *cf. Marsh*

10   *v. Colvin*, No. 12-17014, 2015 WL 3773004, at *2 (9th Cir. June 18, 2015) (holding that

11   the ALJ erred by failing to address the treating physician's opinion because the ALJ must

12   give "specific and legitimate" reasons for rejecting a treating doctor's opinion).

13        At step one of the ALJ's credibility determination, the ALJ concluded that the

14   claimant suffered from an underlying impairment that could reasonably produce some

15   degree of the symptoms alleged.  A.R. 25.  Specifically, the ALJ found that claimant

16   suffered a severe impairment of degenerative joint disease of the left knee, status post

17   arthroscopy for meniscus tear; diabetes mellitus; and peripheral neuropathy.  A.R. 23.

18   Therefore, with no evidence of malingering, the ALJ must provide specific, clear and

19   convincing reasons for finding claimant's subjective symptom testimony not credible in

20   step two of her credibility analysis.

21        The ALJ made the following credibility determinations in step two of her analysis:

22           The claimant's statements . . . are not credible to the extent
23           they are inconsistent with the above residual functional
             capacity assessment.  The claimant alleged that he has pain in
24           the left knee when he walks, goes up and down stairs, or
             climbs a ladder.  He also said that his knee hurts after he walks
25           for 2 miles.  He estimated that he can lift up to 40 lbs. and
             acknowledged doing housework such as sweeping, mopping,
26           laundry, and making his bed.  He drives a car.  He takes only
             over the counter Motrin at night. Exhibit 3E.

27   A.R. 25.  Claimant's complete record of subjective testimony included: (1) July 7, 2008

28   Exertion Questionnaire, (2) June 10, 2010 hearing testimony, and (3) September 4, 2012

United States District Court
Northern District of California

hearing testimony.  A.R. 275-77, 67-81, 47-66.  Martinez argues that at step two of the

ALJ's credibility determination, the ALJ improperly rejected his June 10, 2010, and

September 4, 2012, hearing testimonies because she failed to provide clear and convincing

reasons for doing so.  Dkt. No. 16 at 11.

It is unclear which subjective symptom testimony in the record the ALJ relied on in

her decision.  A.R. 25.  The ALJ did not cite every subjective symptom that she considered

in her credibility assessment.  *Id.*  The Court infers, however, that the ALJ relied on the

July 7, 2008 Exertion Questionnaire because the symptoms appear to be taken from

claimant's responses there.  A.R. 275-77.  The ALJ did not clearly address claimant's

June 10, 2010 hearing testimony or his September 4, 2012 hearing testimony.  Specifically,

the ALJ wrote:

> At the most recent hearing, the claimant alleged numbness in his feet, making it difficult for him to sustain his balance. While I do not doubt that his condition is advancing, I am limited to considering the claimant's condition prior to his date last insured of June 30, 2010.

A.R. 25.  The ALJ acknowledged that claimant complained of numbness in his feet at "the

most recent hearing," but she dismissed claimant's assertion, reasoning that it was after his

last date insured of June 30, 2010.  A.R. 25.  However, the record shows that Martinez

testified he experienced numbness in his feet at both his June 10, 2010 hearing—20 days

before his last date insured—and at his September 4, 2012 hearing, two years after his last

date insured.  A.R. 75, 53.  Because the ALJ did not clearly articulate which testimony she

was addressing, the Court is unable to determine which hearing testimony the ALJ

considered or rejected.  A.R. 25.

Moreover, the ALJ did not provide sufficiently specific, clear and convincing

reasons for rejecting claimant's complete record of subjective testimony.  The ALJ's

rationale for dismissing claimant's hearing testimony that he experienced numbness was

that she was "limited to considering claimant's condition prior to his date last insured of

June 30, 2010."  A.R. 25.  But claimant's June 10, 2010 hearing took place before his date

last insured, and yet the ALJ did not discuss it in her decision.  The Court finds the ALJ

did not provide specific, clear and convincing reasons for rejecting claimant's subjective hearing testimony.

### B.    The Court Cannot Confidently Conclude the ALJ's Failure to Properly Address Claimant's Hearing Testimony Was Harmless Error

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch*, 400 F.3d at 679.  The Ninth Circuit held that "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  In *Stout v. Comm'r, Soc. Sec. Admin.*, the Ninth Circuit held that the ALJ's "silent disregard of lay testimony" was not harmless error. *Id.* at 1055.  There, the court explained that an error is harmless if the ALJ's error was "inconsequential to the ultimate nondisability determination." *Id.*  When fully crediting the lay testimony the ALJ erroneously omitted in *Stout*, the Ninth Circuit held that the claimant's mental impairments precluded claimant from working. *Stout*, 454 F.3d at 1056.  More recently, the Ninth Circuit provided a guideline for applying the doctrine of harmless error. *Marsh*, 2015 WL 3773004, at *3.  In *Marsh*, the Ninth Circuit did not find the ALJ's omission of a treating doctor's medical opinion harmless. *Id*.  The Ninth Circuit explained, "it does seem that where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Id.*

Here, the Court cannot confidently conclude that the ALJ's failure to clearly address claimant's June 10, 2010 hearing testimony was harmless.  The claimant's condition in 2010 was not the same as his condition in 2008, when he completed the Exertion Questionnaire.  According to his testimony on June 10, 2010, he experienced his knee "pop[ping] in and out of [his] joints" in as little as five minutes and as much as 20 minutes of walking.  A.R. 71.  He also testified that if he was standing for 15 minutes to a half-hour, his knee would lock up, and if he was sitting for longer than 30 minutes, he had to flex out his knee for five to ten minutes until he could walk.  A.R. 72.  Indeed, the ALJ

United States District Court
Northern District of California

said that she "do[es] not doubt that his condition is advancing."  A.R. 25.  Therefore, the Court finds remand appropriate.

## IV.  CONCLUSION

The Court GRANTS Martinez's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment.  The Court REMANDS with instructions to the ALJ to properly conduct step two of her credibility determination by addressing claimant's (1) July 7, 2008 Exertion Questionnaire, (2) June 10, 2010 hearing testimony, and (3) September 4, 2012 hearing testimony.  If the ALJ discredits any of Martinez's testimony, she should provide specific, clear and convincing reasons.

**IT IS SO ORDERED.**

Dated:  June 26, 2015

_____
NATHANAEL M.  COUSINS
United States Magistrate Judge